UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES BARSTAD, <br><br> Plaintiff, <br><br> v. <br><br> EARL X. WRIGHT, et al., <br><br> Defendants. | CASE NO. C14-0523-BJR-MAT <br><br> REPORT AND RECOMMENDATION |

## INTRODUCTION

Plaintiff James Barstad, a prisoner at Monroe Correctional Complex (MCC), proceeds *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. In filing suit, plaintiff alleged violation of his federal constitutional and state law rights through numerous mail restrictions and other issues, and named the Washington State Department of Corrections (DOC) and DOC employees as defendants. (Dkt. 6.)

The Court dismissed the DOC and DOC Secretary with initial service of the complaint and later granted summary judgment to defendants as to all but one of plaintiff's claims. (Dkts.

REPORT AND RECOMMENDATION
PAGE - 1

7, 40, 51.)[1] In the remaining claim, plaintiff alleges a violation of his First Amendment right to free speech through an outgoing mail restriction in June 2013. The Court extended the dispositive motion deadline to allow for further briefing on that claim. (Dkt. 55.)[2]

Defendants timely filed a Second Motion for Summary Judgment (Dkt. 56), and plaintiff opposed that motion (Dkt. 59). Plaintiff also recently filed a Motion for Summary Judgment by Special Visitation. (Dkt. 61.) Now, having considered those motions, any papers filed in opposition, and the remainder of the record, the Court recommends STRIKING plaintiff's motion, GRANTING defendants' motion, and DISMISSING this case.

## BACKGROUND

Plaintiff sought to send mail to his brother on June 5, 2013. The mailing consisted of a letter from plaintiff to his brother, a letter from plaintiff to Lear Capital, Inc. ("LCI"), an LCI shipping and transaction agreement signed by plaintiff, and a page of photographs of plaintiff's children. (Dkt. 56, Ex. 8, Attach. A at 2-5.)

In the first letter, plaintiff asks his brother to facilitate a $30,000.00 purchase from LCI. (*Id*. at 2.) He directs his brother to look into an offer by LCI and to use an enclosed letter "as a template" if necessary, but to make the purchase in plaintiff's name. (*Id*. ("Use my letter as a template, for something, if you need to change what I wrote. Just make it in my name. I don't sign things that are not contracts, but my letter to LCI can be construed as one, since I am asking for them to 'perform.'") (emphasis in original).) In the letter to LCI, plaintiff seeks to purchase "silver Polar Bear coins," and indicates the enclosure of a $30,000.00 check and shipping and

---

[1] The Court's April 23, 2015 Order did not explicitly address the recommendation by the undersigned that plaintiff's claims against named defendants Robert Herzog and Earl Wright be dismissed. (*See* Dkt. 40 at 46, 49 and Dkt. 51.) That recommendation is reiterated herein, for the reasons previously described. (*See id*.)

[2] Among other issues, defendants failed in their first motion for summary judgment to provide a copy of the rejected outgoing mail at issue. (*See* Dkt. 40 at 25-26.)

REPORT AND RECOMMENDATION
PAGE - 2

transaction agreement, as well as his intention to use his brother as his agent in the purchase. (*Id.* at 3.) This second letter contains plaintiff's name as "James-Benjamin; Barstad" in both the return address and signature block, reflects a residential address for plaintiff in Spokane, Washington, and does not include his DOC identification number or any indication as to his status as an incarcerated individual. (*Id.*)

The mail was rejected as unauthorized "third party" mail pursuant to DOC 450.100, the policy governing mail for DOC offenders. (Dkt. 32, Ex. 1, ¶32, Attach. A (DOC 450.100), Attach. T (mail rejection "O-MCC-6/5/13-730"); Ex. 2, ¶21; and Ex. 3, ¶17.) Further pursuant to that policy, and consistent with the underlying statutory provision in RCW 72.02.260, the rejected mail was automatically reviewed, the rejection upheld, and the mail retained for a two-year period prior to its destruction. (*See id.*)

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986). In opposing the motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). The nonmoving party must set forth specific facts demonstrating a genuine issue of material fact for trial, *see* Fed. R. Civ. P. (c)(1), and must present significant and probative evidence to support his or her claims, *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "Where the record taken as a whole could not lead a

REPORT AND RECOMMENDATION
PAGE - 3

rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court must draw all inferences in favor of the nonmoving party.  *Id.*

A.   <u>Plaintiff's Motion for Summary Judgment by Special Visitation</u>

Plaintiff recently submitted a Motion for Summary Judgment by Special Visitation.  (Dkt. 61.)  Although characterized as a motion seeking summary judgment and including a statement maintaining that summary judgment is in order, the motion does not address the merits of plaintiff's remaining claim and, rather, contains a series of statements for which plaintiff seeks "proof of claim."  (*Id.*)

Contrary to plaintiff's contention (*see id.* at 1), the parties to this case, not only defendants, were provided the opportunity to file a dispositive motion with regard to the remaining claim. (Dkt. 55.)  While defendants complied with the July 10, 2015 deadline for filing such a motion (*see* Dkt. 56), plaintiff's current motion, placed in the mail on July 31, 2015 and received by the Court on August 12, 2015, exceeded the filing deadline by several weeks.  Plaintiff's motion, moreover, appears entirely unrelated to the remaining claim in this case and wholly frivolous.  The Court should, therefore, strike plaintiff's motion.

B.   <u>Defendants' Second Motion for Summary Judgment</u>

    1.   <u>Restrictions on Prison Mail</u>:

The First Amendment protects a prisoner's right to send and receive mail.  *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  "However, '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (quoted sources omitted).  It is well recognized, for example, that "the legitimate

governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence." *Procunier v. Martinez*, 416 U.S. 396, 412-13 (1974), *limited on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 412-14 (1989).

Balancing a prisoner's constitutional rights and the difficulties associated with prison administration, the Court applies a deferential standard of review in considering restrictions on incoming mail, and upholds a regulation if reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 84-89 (1987). The court considers (1) whether there is a valid, rational connection between the policy and the legitimate governmental interest put forward; (2) whether there are alternative means of exercising the right; (3) whether the impact of accommodating the asserted right will have a significant negative impact on prison guards, other inmates and the allocation of prison resources; and (4) whether the policy is an "exaggerated response" to the prison's concerns. *Mauro v. Arpaio*, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (citing *Turner*, 482 U.S. at 89-90, and *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993)).

Outgoing mail poses less threat to prison security. *Thornburgh*, 490 U.S. at 413-14. Courts, therefore, apply a more demanding standard to prison restrictions on outgoing mail, asking whether a prison's practice furthers "an important or substantial governmental interest unrelated to the suppression of expression[.]" *Martinez*, 416 U.S. at 413. *Accord Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008). "Prison officials . . . must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation." *Martinez*, 416 U.S. at 413. A restriction on outgoing mail must be "'generally necessary'" to a legitimate governmental interest and must at least more closely fit the interest served than a regulation concerning incoming mail. *Thornburgh*, 490 U.S. at 411-12. However, prison officials do not need to show there is no less restrictive mail policy

that could serve the same penological interests. *Id*. (explaining *Martinez* should or need not be read as subjecting prison officials to "a strict 'least restrictive means' test[,]" and "required no more than that a challenged regulation be 'generally necessary' to a legitimate governmental interest."); *accord Witherow*, 52 F.3d at 265.

    2.    <u>Plaintiff's June 2013 Outgoing Mail</u>:

Defendants maintain the proper restriction of plaintiff's June 2013 mail as unauthorized third party mail. They explain the restriction as based on the fact that a portion of the contents were intended for a person other than the person named as recipient. (*See* Dkt. 32, Ex. 1, ¶32, Attach. T; Ex. 2, ¶21; and Ex. 3, ¶17; Dkt. 56, Ex. 8, ¶1-2).) Also, the letter did not contain plaintiff's correct address or other identifying information, in contravention of DOC Policy 450.100. (Dkt. 32, Ex. 1, Attach. A at 6 (outgoing letters must "have a complete return address that includes the full committed name, DOC number, housing assignment, and the full name and address of the facility."))

Defendants describe the LCI letter and its contents as misleading and a threat to the DOC's penological objective of preventing inmates from hiding their incarceration to third parties in an attempt to intentionally and secretly hide activity that may or may not be allowed per DOC policy. (Dkt. 56, Ex. 8, ¶3.) Defendants attest such behavior is commonly attempted to avoid the correctional and criminal justice systems and correspond and engage in prohibited activities. (*Id*.) They state that plaintiff's mail would not have been rejected had he sent his LCI letter and attachment separately and directly to the company, including a properly addressed letter and envelope. (*Id*., ¶4.) Had plaintiff done so, the envelope would have included a stamped statement informing LCI the letter was from an incarcerated individual. (Dkt. 32, Ex. 1, Attach. A at 6 (envelopes containing outgoing mail will include the following or a similar

REPORT AND RECOMMENDATION
PAGE - 6

message: "'This was mailed by an offender confined at a Washington State [DOC] facility. Its contents are uncensored.'"))

Defendants do not identify a single or precise DOC policy provision governing a "third party" mail restriction of the type at issue in this case. The mail policy explicitly prohibits correspondence "from a third party" (*id.* at DOC 450.100(IV)(B)(1)(a)(3)), as well as offender-to-offender correspondence (*id.* at DOC 450.100(II)). The policy also requires that all letters contain complete return address information, including identification of the sender as a confined DOC offender, and that the salutation/opening of correspondence other than legal mail "contain the name of the person that appears on the envelope." (*Id.* at DOC 450.100(IV)(B)(1)(a).) It further classifies mail "without an identifiable author/sender" as unauthorized. (*Id.* at DOC 450.100, Attach. 1, ¶34.) Given that plaintiff's mail included a letter and attachment not directed to the name of the individual appearing on the envelope and that the third party letter failed to include plaintiff's proper address or any information revealing his incarceration, the Court is satisfied the mail was properly rejected in accordance with DOC policy. The Court, therefore, turns to the question of whether the rejection of the mail based on that policy ran afoul of plaintiff's First Amendment rights.

Plaintiff maintains defendants overreached in restricting his mail for containing third party correspondence given the absence of any escape plans, encoded messages, and/or criminal activity. *See Martinez*, 416 U.S. at 413 (prison officials may censor outgoing mail concerning escape plans, containing messages about proposed criminal activity, or transmitting encoded messages). However, as noted by defendants, prisons are not constrained to restricting only such mail. Indeed, in *Martinez*, while acknowledging those concerns as "[p]erhaps the most obvious example of justifiable censorship of prisoner mail", the United States Supreme Court eschewed

REPORT AND RECOMMENDATION
PAGE - 7

the need to discuss other "less obvious possibilities[,]" explaining: "[I]t is not our purpose to survey the range of circumstances in which particular restrictions on prisoner mail might be warranted by the legitimate demands of prison administration as they exist from time to time in the various kinds of penal institutions found in this country." *Id*. *See also id.* at 414, n.14 (noting with favor policies of the Federal Bureau of Prisons, which include restrictions on incoming and outgoing mail associated with a prisoner running a business while in confinement).

Plaintiff also points to the content of the LCI letter as unrelated to any of the concerns addressed in the DOC mail policy. However, the mail was not rejected due to the substantive content of the LCI letter, i.e., plaintiff's desire to purchase $30,000.00 worth of silver polar bear coins from LCI. Nor was the DOC required to show the letter evidenced criminal activity. *See id*. at 414 ("This does not mean, of course, that prison administrators may be required to show with certainty that adverse consequences would flow from the failure to censor a particular letter. Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty.") Instead, the mail restriction must be shown to be generally necessary to protect the important or substantial governmental interests identified. *Id*. at 413-14.

Defendants here show the mail restriction was content neutral and closely tied to the identified governmental interests. The policies underlying the mail restriction serve to prevent correspondence in which an inmate seeks to hide his incarceration for an improper purpose, as well as unapproved offender-to-offender correspondence. As previously demonstrated by defendants, offender-to-offender correspondence poses a substantial threat to the penological objective of maintaining institutional security because it would allow security breaches, such as gang member communication about drug trafficking within the facility or coercion/strong arming

REPORT AND RECOMMENDATION
PAGE - 8

of other offenders.  (*See* Dkt. 40 at 18-19, 25-26.)  *See also Morrison v. Hall*, 261 F.3d 896, 907 (9th Cir. 2001) (upholding requirement of complete name in return address of incoming mail based on need to maintain security).  Defendants here further demonstrate an important governmental interest in preventing inmates from hiding their incarceration and their communications with third parties in order to circumvent the correctional and criminal justice systems and engage in prohibited activities.  Mail implicating these concerns poses threats related not only to DOC facilities, but also to the general public.  *See generally Altizer v. Deeds*, 191 F.3d 540, 547-48 (4th Cir. 1999) (stating that if inmates' outgoing mail could not be opened and inspected "a prison official would never know that a letter contained the very type of material that, according to the Supreme Court, could rightfully be censored, i.e., correspondence sent by an inmate that would be detrimental to the security, good order, or discipline of the institution; necessary for the protection of the public; or used to facilitate criminal activity") (emphasis added).  Moreover, plaintiff could have easily avoided the mail restriction by sending properly addressed correspondence directly to LCI, separately from the correspondence to his brother.

Plaintiff's arguments in opposition to defendants' motion for summary judgment are not persuasive.  He suggests a separate letter to LCI would not have allowed for payment.  However, the LCI letter already indicated plaintiff's brother would be "affect[ing the] purchase" (Dkt. 56, Ex. 8 at 3) and, as plaintiff concedes, the DOC "routinely allows letters to [his brother], asking him to 'cut a check for payment' of certain items or another." (Dkt. 59 at 4.)  Plaintiff could have, alternatively, had the funds he intended to use for the $30,000.00 purchase deposited into his trust account to be used consistent with DOC policy.

Nor is it necessarily clear the LCI letter did not, in and of itself, implicate any important

REPORT AND RECOMMENDATION
PAGE - 9

governmental interests. For example, while asserting an absence of proof he was hiding his incarceration, plaintiff provides no explanation as to why he included an incorrect, private residential address in the LCI letter. As noted by defendants, the depiction of plaintiff's name in the letter as "James-Benjamin; Barstad" and the address provided correspond to the name and address associated with plaintiff's frivolous attempt to assert a "'sovereign' corporate persona" as an indispensable party to this action. (*See* Dkts. 43, 48.)[3]

Finally, defendants address the question previously raised as to why the third-party items were not removed and the remaining content mailed out of the facility. (*See* Dkt. 6 at 69 and Dkt. 40 at 26.) That is, the DOC interprets RCW 72.02.260, the statute underlying the relevant policy provision in DOC 450.100, to require that all documents included as a part of a mailing be considered as one mailing, and that all such documents be maintained as rejected. (Dkt. 56, Ex. 8, ¶5); RCW 72.02.260 ("Whenever the superintendent of an institution withholds from mailing letters written by inmates of such institution, the superintendent shall forward such letters to the secretary of corrections or the secretary's designee for study and the inmate shall be forthwith notified that such letter has been withheld from mailing and the reason for so doing. Letters forwarded to the secretary for study shall either be mailed within seven days to the addressee or, if deemed objectionable by the secretary, retained in a separate file for two years and then destroyed.")

Plaintiff does not challenge the legitimacy of the DOC's interpretation of RCW

---

[3] Defendants also state that the LCI letter can be read to hide plaintiff's financial information from the DOC, noting the letter "relates to purchasing $30,000 of coins with money Mr. Barstad has deposited outside his prison account even though Mr. Barstad has informed this Court that he is indigent." (Dkt. 60 at 3.) However, while the letter could raise an issue as to representations made by plaintiff to this Court (*see* Dkt. 1 (motion to proceed *in forma pauperis*)), the Court lacks adequate information to allow for a determination as to whether or not the DOC could have or did consider this issue in restricting plaintiff's mail.

72.02.260 (*see* Dkt. 59), and the Court finds no basis for concluding that interpretation and the decision to restrict the entire mailing violated plaintiff's First Amendment rights.  As the Supreme Court explained in *Martinez*, the right protected by the First Amendment, in the context of prisoner correspondence, is that "against unjustified governmental interference with the intended communication." *Martinez*, 416 U.S. at 408-09.  Defendants here, for the reasons set forth above, provided sufficient justification for the interference with plaintiff's May 2013 outgoing mail.  The Court, for this reason and for the reasons stated above, finds no dispute of material fact and defendants entitled to summary judgment in relation to plaintiff's sole remaining claim.

## CONCLUSION

Plaintiff's Motion for Summary Judgment by Special Visitation (Dkt. 61) should be STRICKEN as untimely and frivolous.  Because defendants demonstrate their entitlement to summary judgment, the Court should GRANT Defendants' Second Motion for Summary Judgment (Dkt. 56) and DISMISS this case.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION
PAGE - 11

will be ready for consideration by the District Judge on **September 11, 2015**.

DATED this 18th day of August, 2015.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 12